Roger W. TUDOR, Appellant

v.

**INDUSTRIAL MOLD & MACHINE CO., INC.; Honorable Richard M. Joiner, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

**No. 2011–SC–000589–WC.**

Supreme Court of Kentucky.

Aug. 23, 2012.

Daniel Caslin, Mary Michele Cecil, Caslin, Cecil & Holtrey, Owensboro, KY, Counsel for Appellant, Roger W. Tudor.

David Leo Murphy, Murphy Law Offices, PLLC, Louisville, KY, Counsel for Appellee, Industrial Mold & Machine Co., Inc.

Eric M. Lamb, Lamb & Lamb, PSC, Louisville, KY, Counsel for Amicus Curiae, Kentucky Chapter of American Federation of Labor and Congress of Industrial Organizations (Referred to as "Kentucky AFL–CIO").

## OPINION OF THE COURT

This appeal concerns the method for excluding impairment from a non-compensable disability when calculating a worker's permanent partial disability benefit under the post–1996 version of KRS 342.730(1)(b).

The Administrative Law Judge (ALJ) calculated a benefit based on the claimant's entire post-injury permanent impairment rating and then subtracted an amount equal to a benefit based on his pre-existing active impairment rating. Reversing, the Workers' Compensation Board determined that the present version of KRS 342.730(1)(b) requires the calculation of income benefits to be based only on the permanent impairment rating caused by the injury being compensated. The Court of Appeals affirmed and we affirm.

The claimant's history of back pain dated to the early 1990s and worsened gradually over the years. He underwent lumbar surgery in August 2008 after the pain began to radiate into his hip and right leg, but was able to return to work subsequently without restrictions. He sustained the work-related injury that was the subject of his claim on August 31, 2009; underwent a second lumbar surgery; and again returned to work without restrictions at the same or a greater wage than he earned when injured. Based on testimony from

Drs. Taleghani and Barefoot, he argued that his present permanent impairment rating was 23%; that the first surgery produced a 9% impairment rating; and that the remaining 14% resulted from the work-related injury.

Relying on Dr. Travis's final report, the ALJ determined ultimately that the claimant had a permanent impairment rating of 18% under the AMA *Guides to the Evaluation of Permanent Impairment (Guides);* that his impairment rating was 9% immediately before the August 31, 2009 injury; and that the injury resulted in a 9% impairment rating. The ALJ determined that "there currently exists no basis for exclusion of part of an award of compensation" and concluded that *Transport Motor Express, Inc. v. Finn*[1] provided guidance for the benefit calculation although KRS 342.120 had been repealed.

Having determined that the claimant had an 18% permanent disability rating (18% × 1.0) presently; that his disability rating immediately prior to the injury was 7.65% (9% × 0.85); and that he returned to work at the same or a greater wage, the ALJ calculated his weekly benefit as follows:

| | |
|---|---|
| Benefit for 18% disability rating | $91.71 |
| LESS: Benefit for 7.65% disability rating | $38.98 |
| Benefit awarded | $52.73 |

The Board reversed, convinced that the ALJ applied an erroneous method to calculate the disability rating caused by the claimant's injury and to exclude the pre-existing active lumbar condition when calculating his benefit.

The claimant argues that KRS 342.730(1) is silent concerning the method for excluding prior, active disability when calculating an injured worker's income benefit. He maintains that the ALJ's ap-

1. 574 S.W.2d 277 (1978).

proach is consistent with the reality that his work-related injury was superimposed on a pre-existing condition and with the AMA *Guides,* which state that impairment ratings reflect an individual's functional limitations, not their disability.[2] Moreover, the approach is consistent with KRS 446.080's mandate to construe all statutes liberally in order to accomplish their objectives, which according to the claimant requires KRS 342.730(1) to be "construed in favor of the injured worker." We disagree.

*Transport Motor Express, Inc. v. Finn* was decided under the 1972 version of Chapter 342. The court determined that KRS 342.730(1) and KRS 342.120 required a two-step process in which the income benefit was calculated before liability was apportioned among the employer, worker, and Special Fund under *Young v. Fulkerson.*[3] The 1972 version of KRS 342.120(4) required "compensation" for a pre-existing disabling disease or injury to be excluded from an award. *Young v. Fulkerson* construed the provision as excluding compensation for disability that existed immediately before a compensable injury unless the injury, alone, would have caused the ultimate disability had there been no pre-existing disability or dormant non-disabling condition, in which case the employer was liable for the entire award. The Special Fund was liable for the portion of the award that remained after deducting the portion attributable solely to the injury, for which the employer was liable, and the portion found to exist immediately before the injury, which was non-compensable.

The 1996 General Assembly amended Chapter 342 significantly. Unlike the 1972 statutes, post–1996 versions of KRS 342.730(1)(b) base the calculation of permanent partial disability benefits on the product of "the permanent impairment rating caused by the injury" and a statutory factor. Moreover, post–1996 versions of KRS 342.120 eliminate Special Fund liability for injuries occurring after December 12, 1996. Contrary to the claimant's argument, the present version of Chapter 342 does provide a basis for excluding a pre-existing active condition when calculating a partial disability benefit and it differs from the two-step process addressed in *Transport Motor Express, Inc. v. Finn.*

The present version of KRS 342.730(1)(b) states as follows:

> For permanent partial disability, sixty-six and two-thirds percent (66–2/3%) of the employee's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740, *multiplied by the permanent impairment rating caused by the injury* or occupational disease as determined by "Guides to the Evaluation of Permanent Impairment," American Medical Association, latest edition available, times the factor set forth in the table that follows:
>
> | AMA Impairment | Factor |
> | --- | --- |
> | 0 to 5% | 0.65 |
> | 6 to 10% | 0.85 |
> | 11 to 15% | 1.00 |
> | 16 to 20% | 1.00 |
> | 21 to 25% | 1.15 |
> | 26 to 30% | 1.35 |
> | 31 to 35% | 1.50 |
> | 36% and above | 1.70 |
>
> (emphasis added).

KRS 342.730(1)(c) provides benefit multipliers based on the worker's physical capacity to perform the type of work performed at the time of the injury, age, and education as well as on the cessation of employment after a return to work at the same or a greater wage. Moreover, KRS

---

**2.** *Guides* at 4, 9.

**3.** 463 S.W.2d 118, 120 (Ky.1971).

342.730(1)(d) adjusts the duration of the award and maximum benefit to favor disability ratings that exceed 50%.

As defined in KRS 342.0011(35) and (36), the term "permanent impairment rating" refers to "the percentage of impairment caused by the injury" as determined by the *Guides* and the term "permanent disability rating" refers to the product of the permanent impairment rating selected by the ALJ and the corresponding factor found in KRS 342.730(1)(b). Not only does KRS 342.730(1)(b) base the income benefit calculation on "the permanent impairment rating caused by the injury," KRS 342.730(1)(e) states as follows:

> For permanent partial disability, *impairment for nonwork-related disabilities,* conditions previously compensated under this chapter, conditions covered by KRS 342.732, and hearing loss covered in KRS 342.7305 *shall not be considered in determining the extent of disability or duration of benefits* under this chapter. (emphasis added).

The court explained in *Roberts Brothers Coal Company v. Robinson*[4] that since 1996 KRS 342.730(1)(b) has based permanent partial disability benefits on the permanent impairment rating that the injury causes, with the amount of disability being determined by statute. Noting that the terms "impairment" and "disability" are not synonymous under Chapter 342, the court determined that pre-existing disability must be excluded when calculating a total disability award under KRS 342.730(1)(a) but that pre-existing impairment must be excluded when calculating a partial disability award under KRS 342.730(1)(b).

The claimant argues that the legislature intended for the words "caused by the injury" to refer to the worker's entire post-injury permanent impairment rating and intended for the benefit attributable to the nonwork-related impairment rating to be deducted from the benefit that the entire post-injury impairment would have warranted. We disagree.

KRS 342.730(1)(e) is unambiguous. It prohibits "impairment" from nonwork-related disabilities to be considered when determining not only the extent of the worker's disability but also whether the worker's benefits will extend for 425 or 520 weeks. In other words, unlike the statutes at issue in *Transport Motor Express, Inc. v. Finn,* the post–1996 versions of KRS 342.730(1)(b)–(e) and KRS 342.120 do not require "compensation" for nonwork-related disability to be excluded from an award. They prohibit "impairment" from a nonwork-related disability from being considered when selecting the permanent impairment rating caused by an injury; when calculating the disability rating and permanent partial disability benefit; and when determining the duration of the benefit.

We acknowledge that the impact of an injury may be greater on a worker with a pre-existing condition that warrants a permanent impairment rating and that the factors used in KRS 342.730(1)(b) increase for higher permanent impairment ratings, producing higher disability ratings and resulting in greater benefits. We note, however, that KRS 342.730(1)(c) takes an injury's impact on a particular worker into account by providing a triple benefit to those who, though only partially disabled, lack the physical capacity to perform the type of work performed at the time of the injury and by providing additional multipliers based on age and educational level. It also permits a reopening at any time in order to allow individuals who return to work at the same or a greater wage, such

---

4.   113 S.W.3d 181, 183 (Ky.2003).

as the claimant, to receive a double benefit should they cease to do so in the future.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.